UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOSE JUAN ESPINOZA,<br><br>    Plaintiff,<br><br>    v.<br><br>D. ASUNCION, et al.,<br><br>    Defendants. | Case No. 16-cv-01263-LB<br><br>**ORDER DENYING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 45 |

## INTRODUCTION

This is a prisoner's civil rights case.[1] Jose Espinoza alleges that Salinas Valley State Prison officials violated his Eighth Amendment rights when a guard shot him to end a prison-yard fight.[2] Mr. Espinoza suffered injuries to his hand, wrist, fingers, neck, and face, and he brings excessive-force claims against prison correctional officers and their supervisors.[3] The defendants now move for summary judgment under the Prison Litigation Reform Act on the ground that Mr. Espinoza did not exhaust his administrative remedies.[4] They assert that, under the prison's grievance

---

[1] First Amended Compl. ("FAC") – ECF No. 40. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations refer to the page numbers at the top of documents.

[2] *See generally id.*

[3] *See id.* ¶¶ 14–28, 45–64.

[4] Motion for Summary Judgment – ECF No. 45.

ORDER — No. 16-cv-01263-LB

procedures, Mr. Espinoza filed his grievance too late despite his ability and opportunity to do so in a timely manner.[5] Mr. Espinoza urges that, despite his efforts, he was denied access to the necessary grievance forms.[6]

The court held a hearing on the matter on March 23, 2017. The court denies the defendants' motion because the evidence submitted, viewed in the light most favorable to Mr. Espinoza, shows that the administrative-grievance procedure was effectively unavailable to him despite his reasonable and appropriate efforts.

## STATEMENT

The issue here is whether the Salinas Valley State Prison administrative-grievance procedures were available to Mr. Espinoza — *i.e.* whether he had the ability and opportunity to exhaust his administrative remedies. The court accordingly sets forth below the facts bearing on the administrative framework at Salinas Valley and Mr. Espinoza's access to those processes.[7]

**1. Salinas Valley State Prison Grievance Procedures**

The Salinas Valley State Prison's administrative-grievance process is set forth in Cal. Code Regs. tit. 15, § 3084 *et seq.*[8] Under those procedures, an inmate "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." *Id.* § 3084.1(a). The process consists of three levels of review, *see id.* § 3084.7; and, generally, only a third-level decision fully exhausts an inmate's administrative remedies. *Id.* § 3084.1(b); *Woodford v. Ngo*, 548 U.S. 81, 85–86, 93–94 (2006).

---

[5] *See generally id.*

[6] Opposition to Summary Judgment – ECF No. 61.

[7] The court denies the defendants' evidentiary objections as moot because the court does not rely on the materials that they object to in reaching its decision. (*See* Reply – ECF No. 71 at 1–4.) The court thus also denies Mr. Espinoza's administrative motion to file a response to those objections. (ECF No. 74.)

[8] *See* Voong Decl. – ECF No. 53, ¶¶ 3–8, Ex. A (attaching the regulations as of 2014).

ORDER — No. 16-cv-01263-LB     2

1   The prison must provide inmates with "equal access to the appeals process and the timely

2   assistance necessary to participate" therein, and it must ensure that appeal forms "are readily

3   available." Cal. Code Regs. tit. 15, § 3084.1(c), (e). Those appeal forms are necessary to initiate an

4   administrative appeal: an inmate must file a grievance on a specific form (Form 602) within thirty

5   days of the event or action being challenged. *Id.* §§ 3084.2(a), 3084.8(b). If an inmate fails to

6   submit the grievance within the thirty-day time limit, but had the opportunity to do so, the

7   grievance may be cancelled. *Id.* § 3084.6(c)(4). A cancellation, unlike a third-level decision, does

8   not exhaust administrative remedies. *Id.* § 3084.1(b).

## 2. Mr. Espinoza Is Shot, Taken to the Hospital, and Placed in the Prison Infirmary

On March 7, 2014, Mr. Espinoza was in a fight with two fellow inmates on the Salinas Valley prison yard.[9] In response to the fight (the circumstances of which the parties dispute), Correctional Officer Aboytes twice fired his mini-14 rifle and hit Mr. Espinoza in the hand and neck.[10] His hand was "destroyed," his "wrist was shattered[,] and [his] fingers were broken."[11]

Mr. Espinoza was taken to an outside hospital for medical treatment, where he stayed for three weeks.[12] While there, he had multiple surgeries to repair his injuries.[13] Pins were inserted into three of his fingers and his wrist, and his arm was put in a hard cast.[14] Mr. Espinoza suffered "screaming pain" while at the hospital and was "real medicated."[15]

On March 28, 2014, Mr. Espinoza returned to the prison and was placed in the Correctional Treatment Center, the prison infirmary, because he "required a higher level of medical care than

---

[9] FAC ¶ 1–2; Answer to FAC – ECF No. 43, ¶¶ 1–2.

[10] FAC ¶ 6; Answer to FAC ¶ 6.

[11] Espinoza Dep. – ECF No. 63-6 at 23 (p. 22). Where this order cites depositions, the first pinpoint citation is to the ECF-generated page number; the additional, parenthetical "p." citation is to the deposition transcript's original pagination.

[12] FAC ¶ 39; Answer to FAC ¶ 39; Meyer Decl. – ECF No. 63-9, Ex. 9 at 4.

[13] FAC ¶ 9; Answer to FAC ¶ 9.

[14] Espinoza Dep. at 29, 64 (pp. 28, 68); Parra Decl. – ECF No. 50, ¶ 11 (noting that Mr. Espinoza had a pin in his hand); FAC ¶ 9; Answer to FAC ¶ 9.

[15] Espinoza Dep. at 45 (p. 44).

ORDER — No. 16-cv-01263-LB                  3

1  could be provided in a regular housing unit."[16] The infirmary "is like a hospital within the prison,"
2  where inmates with a variety of conditions are treated.[17] There are twenty-four cells in the
3  infirmary: twelve for mental-health patients and twelve for medical patients.[18] Each cell houses
4  only one inmate; no patient has a cellmate.[19] The cells have an intercom, which, "[w]hen pressed,
5  . . . lights up an indicator at the [infirmary] officers' station."[20] The cells use a two-door,
6  anteroom, access system.[21]

### 3. Mr. Espinoza Is Placed on Administrative Segregation Status

While in the infirmary, Mr. Espinoza was put on "administrative segregation status" ("Ad-Seg Status").[22] Generally, inmates involved in a fight will be housed "in [the] administrative segregation[] [unit] to ensure no more violence occurs."[23] But inmates in the infirmary, who would otherwise "be housed in administrative segregation" if not for their healthcare needs, are placed on Ad-Seg Status.[24] And so Mr. Espinoza, who "was being charged with a rules violation report for his involvement in the attack on the yard that led to his being shot," was placed on Ad-Seg Status while in the infirmary.[25]

Mr. Espinoza's Ad-Seg status affected the amount of his contact with correctional officers in the infirmary — the parties disagree to what extent. In the infirmary generally, officers "enter inmates' cells . . . at least three times per day for meals, and [] twice per day to deliver medication."[26] When an inmate is on Ad-Seg Status, two officers escort medical staff into the cells

---

[16] O'Brien Decl. – ECF No. 49, Ex. A at 14; Parra Decl. ¶ 10.
[17] Atkins Decl. – ECF No. 46, ¶ 9.
[18] *Id.* ¶ 8.
[19] *Id.*
[20] *Id.* ¶ 7.
[21] Parra Dep. – ECF No. 63-12 at 8–9 (pp. 36–37).
[22] Atkins Decl. ¶ 14; Parra Decl. ¶¶ 13–14.
[23] Parra Decl. ¶ 13.
[24] Atkins Decl. ¶ 10.
[25] *Id.* ¶ 14; Parra Decl. ¶¶ 13–14.
[26] Atkins Decl. ¶¶ 23–24.

ORDER — No. 16-cv-01263-LB                4

because those inmates "present a higher safety risk than general population inmates."[27] And, according to the defendants, "[b]ecause there are three shifts, and three officers working in the [infirmary] per shift (except for overnight and on weekends, when there are two), an inmate in the [infirmary] would generally encounter eight different officers each day."[28]

But Mr. Espinoza disagrees with the defendants' calculations: "[he] did not see many officers in the [infirmary]."[29] Indeed, he says, "most times only one guard [went] into [his] cell along with the nurse to deliver food and medicine."[30] And "[b]ecause some officers, including Officer Parra, [worked] double shifts over there, many days [he] would only see Officer Parra and one other officer."[31]

Mr. Espinoza's Ad-Seg Status also limited his movement in the prison. Inmates so classified are not allowed out of their cells, for example, to go to the yard.[32] They are only allowed to leave their cells to see the infirmary doctor; in that case, the inmate will be handcuffed, taken to the doctor, and then back to his cell.[33]

**4. Mr. Espinoza's Access to Grievance Forms While in the Infirmary**

Inmates in the infirmary — including inmates on Ad-Seg Status[34] — generally have access to writing instruments, prison grievance forms, and the mail. They can get "paper, small pencils (similar to golf scorecard pencils), pen fillers (the inside of a pen without the plastic or metal casing), and envelopes."[35] The inmates can also obtain the prison's two grievance forms: those for

---

[27] *Id.* ¶ 10.

[28] *Id.* ¶¶ 23–24.

[29] Espinoza Decl. – ECF No. 62, ¶ 5.

[30] *Id.*

[31] *Id.*

[32] Atkins Dep. – ECF No. 63-8 at 15–17 (pp. 44–46).

[33] *Id.* at 17–19 (pp. 46–48).

[34] Atkins Decl. ¶ 12 ("Unless otherwise ordered, ad-seg status inmates are allowed to possess a reasonable number of pencils, pen fillers, papers, clothing, and personal hygiene items.").

[35] *Id.* ¶ 18.

1  healthcare grievances and those for general grievances (Form 602).[36] And they have access to a
2  request form (Form 22), through which they can request, among other things, grievances and law-
3  library access.[37]

4  Although inmates have access to grievance forms, there are none in the cells themselves and
5  the prison does not bring the forms to the infirmary on supply carts.[38] Indeed, there were no forms
6  in Mr. Espinoza's cell and he was not aware of any "sitting out anywhere in the [infirmary]."[39] He
7  did not know where prison officials kept them.[40]

8  Infirmary-bound inmates must therefore request grievance forms and, to do so, "can ask any
9  officer or medical staff member," or request one from the law library.[41] They can request
10 grievance forms when an officer or nurse enters their cells, or by "'flag[ging] down' an officer
11 conducting rounds in the [infirmary], which occur[s] approximately every half an hour to forty-
12 five minutes."[42] They can also request forms through their cells' intercom system.[43] When asked
13 for a Form 602, officers pick one up at the officers' station, "bring it back, and give it to [the
14 inmate]."[44] Once filled out, inmates use institutional mail and free, "U-Save-Em" envelopes "to
15 submit grievances to the appeals coordinator by giving the grievances to officers."[45]

### 5. Mr. Espinoza Submits Request Forms and Asks for a Grievance Form

The defendants identify three forms that Mr. Espinoza requested or submitted while in the infirmary:

---

[36] *Id.* ¶¶ 21–22.
[37] *Id.* ¶ 28.
[38] Atkins Dep. at 27 (p. 88).
[39] Espinoza Dep. at 31–32 (pp. 30–31).
[40] *Id.*
[41] Atkins Decl. ¶¶ 18, 25; Atkins Dep. at 27–29 (pp. 88–90); Parra Dep. at 5 (p. 33).
[42] Atkins Decl. ¶¶ 25–26.
[43] *Id.*; Atkins Dep. at 28–29 (pp. 89–90).
[44] *Id.* at 26–27 (pp. 87–88).
[45] Atkins Decl. ¶ 19.

ORDER — No. 16-cv-01263-LB                 6

1  First, Officer Parra declares that Mr. Espinoza asked him for a healthcare grievance.[46] Officer Parra says he gave the form to Mr. Espinoza by leaving it on his bed.[47] Mr. Espinoza, however, denies having requested or received a medical grievance "from Officer Parra or any other prison staff."[48] He asserts that he never filled out or submitted one.[49]

Second, Officer Parra also identifies a request form (Form 22) that Mr. Espinoza submitted on May 27, 2014.[50] In it, he requested "forms for case law along with forms for supplies."[51] Through this form, Mr. Espinoza testified, he intended to ask the library for legal documents, including a general grievance form (Form 602).[52] Officer Parra signed it and directed it to the law library.[53] There is no evidence of the library responding.[54]

Third, Officer Atkins identifies a second Form 22 that Mr. Espinoza submitted on June 2, 2014.[55] In it, Mr. Espinoza asked if a physical therapist was going to visit him, noting that he had "seen [the] therapist only twice [] when [he] was told [the therapist] would be [there] often."[56] Mr. Espinoza also noted that someone (presumably a correctional officer) "made your rounds today . . . but didn't stop by my room," and noted that he was still having a lot of pain in his hand.[57] Officer Atkins signed the form.[58]

---

[46] Parra Decl. ¶ 23.
[47] *Id.*
[48] Espinoza Decl. ¶ 6.
[49] *Id.*
[50] Parra Decl. ¶ 25, Ex. A.
[51] *Id.*, Ex. A.
[52] Espinoza Dep. at 34–35 (pp. 33–34).
[53] Parra Decl. ¶ 25, Ex. A.
[54] *See* Parra Dep. at 41 (p. 96).
[55] Atkins Decl. ¶ 29, Ex. A.
[56] *Id.*, Ex. A.
[57] *Id.*
[58] *Id.*, ¶ 29, Ex. A.

1    Mr. Espinoza did not ask Officer Parra or Officer Atkins for help filling out these three forms
2    and neither officer saw him write them himself.[59]
3    Separately, Mr. Espinoza testified that he four times requested a general grievance (Form 602)
4    while in the infirmary: three times from Officer Parra and once from an unnamed officer.[60] Mr.
5    Espinoza first asked Officer Parra to "give [him] a [grievance form] and help [him] write it."[61] He
6    explained to Officer Parra that he could not write and needed help to file the grievance.[62] But,
7    according to Mr. Espinoza, Officer Parra responded that "somebody from up front would have to
8    come and help [you]."[63] Mr. Espinoza did not know what "up front" meant — "[he] just figured
9    somebody would come from up front."[64] Several days later, Mr. Espinoza again asked Officer
10   Parra for assistance filing a grievance and got the same response: "somebody from up front has to
11   come."[65] Mr. Espinoza got "the impression that [Officer Parra] wasn't trying to help," but he
12   asked a third time, and then "left it alone after that."[66] He did, however, ask another officer, who
13   he described as a "maybe 5', 9", thin, white guy with brown" or blond hair who was "maybe 40"
14   years old.[67]
15   But when these two officers did not help him, he tried to get a Form 602 from the library
16   (through the request form identified by Officer Parra, above).[68] He was ultimately unsuccessful: he
17   never received or submitted a general grievance during his time in the infirmary.[69]

---

[59] *Id.* ¶ 29; Parra Decl. ¶ 25.
[60] Espinoza Dep. at 29–32 (pp. 28–31).
[61] *Id.* at 30 (p. 29).
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.* at 31 (p. 30).
[66] *Id.*
[67] *Id.* at 32 (p. 31).
[68] *Id.* at 34–35, 72–73 (pp. 33–34, 71–72).
[69] *Id.* at 38 (p. 37).

ORDER — No. 16-cv-01263-LB                8

### 6. Mr. Espinoza Leaves the Infirmary, Is Placed in the Administrative Segregation Unit, and Submits a Grievance

After nearly three months in the infirmary, on June 22, 2014, Mr. Espinoza moved to the administrative segregation unit.[70] Typically, in this unit (opposed to the infirmary), inmates do not need to request grievance forms — prison officials bring them (along with other supplies) to the inmates once per week.[71] But when Mr. Espinoza arrived there, the prison was "on lockdown" due to "a perceived serious threat to institutional security."[72]

The parties dispute whether the lockdown affected Mr. Espinoza's access to the grievance forms. During this time, Mr. Espinoza testified, "nobody was doing nothing for nobody."[73] He said the prison was only "running" lunches but that "[y]ou weren't coming out [of] your cell for nothing until they finished searches," which lasted for a week or ten days.[74] Officer Sanchez, on the other hand, declares that the prison's modified program "did not affect [Mr.] Espinoza, because [he] was housed in administrative segregation," and the changes only affected the general prison population.[75] Officer Sanchez further declares that, "even if it had affected him in some way, it certainly would not have affected his ability to obtain a [grievance] Form" — officers would have continued to conduct security and welfare checks, deliver food, and provide medical care, and Mr. Espinoza could have asked them for a form.[76]

In any event, within the first week to ten days in the unit, Mr. Espinoza obtained a grievance form on a supply day.[77] He asked Lieutenant Salazar for assistance, and Lieutenant Salazar sent Officer White to help.[78] Mr. Espinoza asked Officer White to make certain copies, but he

---

[70] *Id.* at 58 (p. 57).

[71] *Id.* at 39 (p. 38); Salazar Dep. – ECF No. 63-16 at 18 (p. 29).

[72] Espinoza Dep. at 41 (p. 40); Sanchez Decl. – ECF No. 52, ¶¶ 9–10.

[73] Espinoza Dep. at 41 (p. 40)

[74] *Id*.

[75] Sanchez Decl. ¶¶ 9–10.

[76] *Id.*

[77] Espinoza Dep. at 48 (p. 47).

[78] *Id.* at 46–52 (pp. 45–51).

ORDER — No. 16-cv-01263-LB            9

ultimately declined Officer White's help to write the grievance.[79] He had a soft cast and his injuries made it "very difficult for [him] to write," but he completed the form on his own.[80] It took him "hours": he started in the morning, took breaks for lunch, dinner, and when his hand hurt, and "finished it right after dinner[;] like 7:00 o'clock maybe."[81] In it, Mr. Espinoza challenged the March 7 shooting as the use of unnecessary, excessive force.[82]

He submitted the Form 602 grievance on July 6 — fourteen days after he left the infirmary — and the appeals coordinator received it the next day.[83]

### 7. The Appeals Coordinator Cancels Mr. Espinoza's Grievance as Untimely

Appeals Coordinator Medina processed Mr. Espinoza's grievance.[84] When he received it, he "first noted that it concerned an allegation of unnecessary excessive force occurring on March 7, 2014, four months before the grievance had been submitted."[85] The grievance was therefore untimely, but Coordinator Medina reviewed Mr. Espinoza's case for "exceptional circumstances" justifying the delay.[86] He did not penalize Mr. Espinoza for the three weeks spent at an outside hospital, but concluded "there was nothing in his records or in his grievance that justified his failure to submit his appeal within thirty days of his return to [the prison]."[87] He accordingly cancelled the grievance as untimely and informed Mr. Espinoza of this conclusion in writing.[88]

The written notice informed Mr. Espinoza that he could not resubmit his cancelled appeal, but that he could appeal the cancellation itself.[89] And so he did.[90] He argued that he could not timely

---

[79] *Id.* at 46–52, 70 (pp. 45–51, 69); White Decl. – ECF No. 54, ¶¶ 5–10.
[80] Espinoza Dep. at 51–53, 68–69 (pp. 50–52, 67–68).
[81] *Id.* at 53, 67–68 (pp. 52, 66–67).
[82] Medina Decl. – ECF No. 48, Ex. B.
[83] *Id.*, Exs. B & C.
[84] Medina Decl. ¶ 6.
[85] *Id.*
[86] *Id.* ¶¶ 6–7.
[87] *Id.* ¶ 7.
[88] *Id.* ¶¶ 7, 9.
[89] *Id.* ¶ 9, Ex. D.

file a grievance because, without success, he "repeatedly asked staff for assistance" to write his grievance and did not have access to the law library while in the infirmary.[91] But the cancellation was upheld at the second-level review because Mr. Espinoza "provided no documentation that [he] was totally incapacitated and/or unable to write an appeal within the prescribed time limits," his claim concerning law-library access was moot, and the staff refuted his claims that they refused to assist him.[92] The cancellation was again upheld at the third level of review.[93]

### 8. Mr. Espinoza Initiates this Lawsuit

After unsuccessfully challenging the cancellation, Mr. Espinoza filed this lawsuit March 2016.[94] The court appointed him counsel and he amended his complaint to assert three Eighth Amendment violations surrounding the March 7, 2014, shooting: (1) use of excessive force; (2) failure to train and supervise; and (3) failure to intervene.[95]

The court, at the parties' request, staged the case to first address whether Mr. Espinoza properly exhausted his administrative remedies under the Prison Litigation Reform Act.[96] The parties completed exhaustion-related discovery and now the defendants move for summary judgment on that issue.

## GOVERNING LAW

### 1. Summary Judgment

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of

---

[90] *Id.* ¶ 10; Meyer Decl. – ECF No. 63-19, Ex. 19.

[91] Meyer Decl., Ex. 19 at 4.

[92] Medina Decl. ¶ 10, Ex.

[93] Meyer Decl. – ECF No. 63-30, Ex. 30.

[94] Compl. – ECF No. 1.

[95] FAC ¶¶ 45–64; Order Appointing Counsel – ECF No. 26

[96] Case-Management Order – ECF No. 32.

1  law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material

2  facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about

3  a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

4  the non-moving party. *Id.* at 248–49.

5      The party moving for summary judgment has the initial burden of informing the court of the

6  basis for the motion, and identifying portions of the pleadings, depositions, answers to

7  interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

8  fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party

9  must either produce evidence negating an essential element of the nonmoving party's claim or

10  defense or show that the nonmoving party does not have enough evidence of an essential element

11  to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

12  Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

13  Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need

14  only point out 'that there is an absence of evidence to support the nonmoving party's case.'")

15  (quoting *Celotex*, 477 U.S. at 325).

16      If the moving party meets its initial burden, the burden shifts to the non-moving party to

17  produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The

18  non-moving party may not rest upon mere allegations or denials of the adverse party's evidence,

19  but instead must produce admissible evidence that shows there is a genuine issue of material fact

20  for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to

21  show a genuine issue of material fact, the moving party is entitled to summary judgment. *See

22  Celotex*, 477 U.S. at 323.

23      In ruling on a motion for summary judgment, inferences drawn from the underlying facts are

24  viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v.

25  Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court does not make credibility determinations

26  or weigh conflicting evidence. *Id.*

27

28

United States District Court
Northern District of California

**2. Prison Litigation Reform Act — Exhausting Administrative Remedies**

"The Prison Litigation Reform Act [PLRA] requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)). The PLRA more fully provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016). Section 1997e(a) requires an inmate to pursue every available step of the prison grievance process. *See Woodford*, 548 U.S. at 90; *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010) ("a [California state] prisoner exhausts the grievance process when he completes the third level" of review). The prisoner must fully exhaust administrative remedies before filing suit. *See, e.g.*, *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

If the prisoner has failed to exhaust, it is proper to dismiss without prejudice those parts of the complaint that are barred by § 1997e(a). *Jones v. Bock*, 549 U.S. 199, 223–24 (2007); *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005). Exhaustion is mandatory; it is no longer left to the discretion of the district court. *Woodford*, 548 U.S. at 85 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). The proper device for raising failure to exhaust is normally by motion for summary judgment under Rule 56. *Id.* at 1166. ("In the rare event that a failure to exhaust is clear on the face of the complaint," however, "a defendant may move for dismissal under Rule 12(b)(6)." *Id.*)

Failure to exhaust administrative remedies under the PLRA "is an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204, 216. Prisoner complaints are not required to plead exhaustion. *Id.* at 215–17. If the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust, then the defendant is entitled to summary judgment. *Albino*, 747 F.3d at 1166. The defendant bears the "ultimate burden" of proving that the

1  prisoner did not exhaust available administrative remedies. *See id.* at 1172, 1176 (citing *Jones*, 549

2  U.S. 199).

3     But "[a]n inmate is required to exhaust only *available* remedies." *Id.* at 1171 (citing *Booth*,

4  532 U.S. at 736). "To be available, a remedy must be available 'as a practical matter'; it must be

5  'capable of use; at hand.'" *Id.* (quoting *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)). Indeed,

6  "the PLRA . . . does not require exhaustion when circumstances render administrative remedies

7  'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing *Nunez v.*

8  *Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). If, under the circumstances of the case, an inmate

9  takes "reasonable and appropriate steps" to exhaust, non-exhaustion will be excused. *See Nunez*,

10  591 F.3d at 1226.

## ANALYSIS

The parties dispute whether Salinas Valley State Prison's grievance procedures were available to Mr. Espinoza. The defendants argue that they were and that Mr. Espinoza's suit must be dismissed because he filed his grievance beyond the thirty-day time limit. Mr. Espinoza, on the other hand, asserts that his injuries and lack of access to the grievance forms rendered the administrative procedures effectively unavailable. He argues that his failure to exhaust his remedies should be excused. To answer this question, the court considers only the time between when Mr. Espinoza arrived at the prison infirmary (March 28) and when he filed his grievance (July 6) because the appeals coordinator did not consider the three weeks he spent at the outside hospital.

If an inmate had the ability and opportunity "to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies." *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009). Thus, "[i]f a Plaintiff did not have the ability to file an appeal within the time-frame mandated by the state, he will not lose his right to be heard in federal [c]ourt." *Marella v. Terhune*, No. 03cv660-BEN (MDD), 2011 WL 4074865, at *7 (S.D. Cal. Aug. 16, 2011) (citing *Marella*, 568 F.3d at 1027)). And, "[e]ven when an inmate has the mental and physical ability to file a timely appeal, he or she must also have the opportunity to do so." *Id.* at *9 (citing *Marella*,

United States District Court
Northern District of California

568 F.3d at 1027). Here, viewing the evidence in the light most favorable to Mr. Espinoza, he did not have access to Salinas Valley's grievance forms and thus the prison's grievance procedure was unavailable to him.

Other Circuits "have held that administrative remedies are not 'available,' and exhaustion is therefore not required, where prison officials refuse to give a prisoner the forms necessary to file an administrative grievance." *Sapp*, 623 F.3d at 822 (citing *Dale v. Lapin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001)).

For example, in *Dale*, the defendants (prison employees) denied the plaintiff access to the prison's grievance system. 376 F.3d at 656. There, the plaintiff "requested the administrative grievance form within [that prison's] 20-day time limit." *Id.* at 654. When he first asked for a grievance form, "he was told that the employees did not have [them], so they gave him blank pieces of paper instead." *Id.* at 655. And when he later asked a guard for the form, the guard said the forms "would have to be obtained from the unit team or else could be provided if the warden so directed." *Id.* That was "on the last day to submit his grievance and so the response he got made it 'virtually impossible to pursue a complaint.'" *Id.* The plaintiff did not again request a form until eighteen months later. *Id.* The defendants did not "give any reason why [the plaintiff] was refused the forms he requested, or . . . explain how he could use the administrative grievance system without the forms mandated for that purpose." *Id.* at 656. The Seventh Circuit therefore held that the defendants "did not meet their burden of proving that [the plaintiff] had available remedies that he did not utilize." *Id.*

Similarly, the Ninth Circuit recently reversed a district court's grant of summary judgment in favor of defendants where they could not access the jail's grievance-system forms. *Hall v. Adams*, 651 F. App'x 628, 629 (9th Cir. 2016). In *Hall*, at the district court, the defendants showed that a grievance process existed, which the plaintiff did not contest. No. 2:13-cv-00324 ACP, 2015 WL 1498909, at *4, *5 (E.D. Cal. Mar. 31, 2015). The plaintiff argued, though, that the "administrative remedies were effectively unavailable to him because the defendants 'never gave [him] a grievance when [he] asked for it.'" *Id.* at *5 (alterations in original). While acknowledging that "inaccessibility of the proper grievance form may render administrative remedies

unavailable," the district court granted summary judgment for the defendants for three reasons. *Id.* at *5–*6. First, the plaintiff did not submit sufficiently specific facts to show inaccessibility — for example, the plaintiff did not "identify which defendants he asked for grievance forms, when he asked them, or how many times he attempted to obtain grievance forms from them." *Id.* at *5. Second, the plaintiff did not establish "that the forms were [un]available through other avenues" — for example, in grievance boxes located in the jail or from other officers, medical staff, inmate workers, or his attorney. *Id.* at *5–*6. And third, the plaintiff "pursued an appeal on a separate issue during the relevant time period," which belied his contention that he was denied access to the grievance forms. *Id.* at *7.

But the Ninth Circuit reversed. 651 F. App'x at 629. The plaintiff presented evidence that the grievance boxes were always empty, that the "defendants refused to provide him grievance forms, and [that] asking other individuals for forms would have been futile." *Id.* The plaintiff "therefore met his burden to come forward with evidence showing 'that there [was] something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.'" *Id.* (quoting *Albino*, 747 F.3d at 1172). The defendants thus did not satisfy their burden "of proving that [the plaintiff] had not exhausted available administrative remedies," and summary judgment was improper. *Id.*

And so it is here, too. The defendants here, as in *Hall*, have satisfied their initial burden by showing that an administrative-grievance procedure is generally available.[97] That administrative process consists of three levels of review and must be initiated with a Form 602 within thirty days of the challenged event.[98] *See* Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.8(b). And they provide evidence that those forms are generally available in the infirmary where Mr. Espinoza was housed for three months: inmates can request grievance forms (1) from officers and medical staff during cell visits, (2) by flagging down an officer during rounds, (3) by using the intercom system, or (4) through the law library.

---

[97] *See* Voong Decl. ¶¶3–8, Ex. A.

[98] *Id.*

ORDER — No. 16-cv-01263-LB               16

The defendants also submit evidence regarding the number of officers that an infirmary-bound inmate on Ad-Seg Status may encounter during the day — *i.e.* the number of people that Mr. Espinoza could have asked for a form. Two officers escort medical staff into these inmates' cells at least three times per day for food and twice for medication, and, "[b]ecause there are three shifts, and three officers working in the [infirmary] per shift (except for overnight and on weekends, when there are two), an inmate in the [infirmary] would generally encounter eight different officers each day."[99] Officer Atkins also declares that he "regularly asked [Mr.] Espinoza how he was doing and if he needed anything," and "told him if he needed anything, to let [him] or the other officers know."[100] The defendants have thus established that a grievance process exists and is generally available.

But like the plaintiff in *Hall*, Mr. Espinoza does not contest that these administrative procedures are generally available at the prison. He instead argues that these remedies were effectively unavailable to him. And he does so by presenting evidence that shows, despite his efforts: (1) he was denied access to the necessary forms, and (2) he did not have the abundance of opportunities to request a form, as the defendants claim.

First, Mr. Espinoza submits evidence that he unsuccessfully requested grievance forms from correctional officers and the library. He four times requested a Form 602 from officers in the infirmary. He testified that he unsuccessfully asked Officer Parra — who he declares was a "regular" in the infirmary — three times for a form and for help filling it out.[101] In these circumstances officers may typically pick up a grievance from the officers' station, "bring it back, and give it to [the inmate]."[102] But in Mr. Espinoza's case, that did not happen. Officer Parra merely responded that "somebody from up front would have to come and help [you]."[103] Mr. Espinoza did not know what that meant, but reasonably concluded that "somebody would come

---

[99] Atkins Decl. ¶¶ 23–24.

[100] *Id.* ¶ 16.

[101] Espinoza Dep. at 29–32 (pp. 28–31).

[102] Atkins Dep. at 26 (p. 87).

[103] Espinoza Dep. at 29–32 (pp. 28–31).

ORDER — No. 16-cv-01263-LB                17

from up front" with a form and to assist him.[104] When that did not happen, he got "the impression that [Officer Parra] wasn't trying to help," but asked Officer Parra once more.[105] Unsuccessful again, Mr. Espinoza asked a different, unnamed but specifically identified officer for assistance.[106]

After the correctional officers did not help him, Mr. Espinoza submitted a request to the library.[107] The parties dispute the meaning of his testimony regarding the library request, but he plainly believed that it would (eventually) help him obtain a grievance form: he wanted a library supply form so that he could request a Form 602.[108] There is no evidence that the library responded.

Second, Mr. Espinoza presents evidence rebutting the number of opportunities and ways in which he could have requested a Form 602. He challenges the defendants' assertions regarding the number of officers that he encountered on a daily basis — *i.e.* the number of officers that he could have asked for help. For example, he declares that because officers (including Officer Parra) worked double shifts in the infirmary, "many days [he] would only see Officer Parra and one other officer."[109] And instead of two officers escorting medical staff into Ad-Seg Status inmates' cells, Mr. Espinoza states that "most times only one guard came into [his] cell along with the nurse to deliver food and medicine."[110] Mr. Espinoza thus rebuts the defendants' argument that he could have asked for a Form 602 from so many officers. He also shows that his cell's intercom may not have been a practical way to get a form: Officer Atkins testified that he never saw an inmate request a grievance form through the intercom system.[111]

---

[104] *Id.*

[105] *Id.*

[106] *Id.*

[107] *Id.* at 34–35, 72–73 (pp. 33–34, 71–72).

[108] *Id.*

[109] Espinoza Decl. ¶ 5.

[110] *Id.*

[111] Atkins Dep. at 28–29 (pp. 89–90).

1   Mr. Espinoza's efforts to obtain a Form 602, and his evidence rebutting the defendants' claims

2   concerning the availability of those forms, create a genuine issue regarding the availability of

3   Salinas Valley's grievance procedure.

4   But the defendants make two arguments to the contrary. First, they argue that "even if asking

5   three times for a grievance form were sufficient to justify over four months of delay, [Mr.]

6   Espinoza fails to raise a triable issue because he fails to identify *when* he supposedly asked for the

7   grievance form."[112] In other words, they assert, "[t]here is no evidence showing that [Mr.]

8   Espinoza asked for a grievance form within the thirty[-]day deadline" because he "never alleges

9   when he asked Officer Parra for a form."[113]

10   The court denies the argument. Although Mr. Espinoza does not identify when he asked the

11   officers for a grievance form, the chronology of events indicates it was before his library request

12   (dated May 27, 2014). It is therefore possible that his requests fell within the thirty-day timeframe

13   (and the defendants do not provide contrary evidence). And, at summary judgment, the evidence is

14   sufficient to create a genuine dispute about Mr. Espinoza's access to the prison's grievance

15   process.

16   Second, the defendants attack the credibility of Mr. Espinoza's testimony regarding his

17   requests to the officers in the infirmary.[114] The court cannot weigh testimonial credibility at

18   summary judgment. *See Matsushita*, 475 U.S. at 587.

19

20   **CONCLUSION**

21   The court concludes that the evidence, viewed in the light most favorable to Mr. Espinoza,

22   raises a genuine dispute as to whether he took reasonable and appropriate steps to exhaust his

23   administrative remedies while housed in the infirmary and administrative segregation unit, but was

24   nonetheless denied the opportunity to do so. At summary judgment, the defendants have not

---

[112] Reply – ECF No. 71 at 12 (emphasis in original).

[113] *Id.*

[114] Motion at 18–22; Reply at 14–17.

carried their burden of showing that Mr. Espinoza failed to exhaust. The court therefore denies the defendants' exhaustion-based summary-judgment motion.

**IT IS SO ORDERED.**

Dated: March 24, 2017



_____
LAUREL BEELER
United States Magistrate Judge